IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| INTEGRATED CARDS, L.L.C.,                )                                                                        )            Plaintiff/Counter-defendant,   )       v.                                                            )   McKILLIP INDUSTRIES, INC. d/b/a/      )   USA/DOCUFINISH,                              )                                                                        )            Defendant/Counter-Plaintiff.     ) | Case No.  06 C 2071    Judge Virginia M. Kendall |

**MEMORANDUM OPINION AND ORDER**

Plaintiff/Counter-defendant Integrated Cards, L.L.C. ("Integrated") filed suit against Defendant/Counter-Plaintiff, McKillip Industries, Inc. d/b/a/ USA/DOCUFINISH ("USA"), alleging patent infringement on U.S. Patent No. 5,462,488 ("the '488 patent") entitled "Integrated card and business form assembly and method for fabricating same on label formation equipment." USA moved for summary judgment on Integrated's claims on the basis of laches and equitable estoppel. For the reasons set forth below, USA's Motion for Summary Judgment is denied and the matter will proceed to a bench trial on the issues of laches and equitable estoppel.

**STATEMENT OF FACTS**

Much like the Capulets and the Montagues, the McKillip brothers have been embroiled in a bitter family dispute for decades. Two brothers, both alike in trade and ambition, and their two Illinois-based integrated card companies, have now brought their battle to the federal courthouse where the Court assumes there will be a healthier outcome for both parties.

In 1994, John J. McKillip ("John") invented a product entitled "Integrated card and business

1

form assembly and method for fabricating same on label formation equipment" and the '488 patent on the product was issued on October 31, 1995. Pltf. Resp. 56.1 ¶ 2.[1] An integrated card consists of a base document, like a letter, with an attached card which can be pulled away from the document. Pltf. Resp. 56.1 ¶ 9.[2] Later that year, John assigned one half of his interest in the '488 patent to Stanley Stack, Jr. ("Stack"). Pltf. Resp. 56.1 ¶ 3. John and Stack remained joint owners of the '488 patent until September 29, 2005 when John assigned his interest to Malessa Partners, LLC ("Malessa"). Pltf. Resp. 56.1 ¶ 3. Stack and Malessa remained joint owners of patent until October, 2005 when Stack assigned his interest to Stack, LLC. Pltf. Resp. 56.1 ¶ 4. Malessa and Stack LLC later assigned their interests in the '488 patent to Integrated. Pltf. Resp. 56.1 ¶¶ 3-4.

Steven McKillip ("Steven"), John's brother, was the principal of United Stencil & Affixing Co., Inc.[3] which changed its name in 1998 or 1999 to USA/Docufinish, the defendant in this action. Pltf. Resp. 56.1 ¶ 6. USA has been operating for over twenty years and is in the business of providing products for segments of the printing industry, including integrated cards. Pltf. Resp. 56.1 ¶ 6. On April 12, 2006, Integrated filed suit against USA alleging that one of its integrated card products infringes upon the '488 patent. Pltf. Resp. 56.1 ¶ 8. It is undisputed that USA has sold the accused product continuously since at least 1995. Pltf. Resp. 56.1 ¶ 8. USA moves for summary judgment on the issue of laches and equitable estoppel.

---

[1] Citations to "Plaintiff's Responses to Defendant's 56.1 Statement" have been abbreviated to "Pltf. Resp. 56.1." Citations to "Response of USA/DOCUFINISH to Integrated's Statement of Material Facts" have been abbreviated to "Def. Resp. 56.1."

[2] Lawyers will recognize these as the way they receive their annual atotrney registration cards. Not every product called an "integrated card" has the same construction. *Id.*

[3] In 1987 John filed articles of incorporation under the name United Stencil & Affixing even though his brother Steve was already operating a company under the same name. Pltf. Resp. 56.1 ¶ 72.

**STANDARD OF REVIEW**

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether a genuine issue of fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the party opposing the motion. *Bennington v. Caterpillar Inc.*, 275 F.3d 654, 658 (7th Cir. 2001); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, the Court will "limit its analysis of the facts on summary judgment to evidence that is properly identified and supported in the parties' [Local Rule 56.1] statement." *Bordelon v. Chicago Sch. Reform Bd. of Trustees*, 233 F.3d 524, 529 (7th Cir. 2000). Where a proposed statement of fact is supported by the record and not adequately rebutted, the court will accept that statement as true for purposes of summary judgment. An adequate rebuttal requires a citation to specific support in the record; an unsubstantiated denial is not adequate. *See Albiero v. City of Kankakee*, 246 F.3d 927, 933 (7th Cir. 2001); *Drake v. Minnesota Mining & Mfg. Co.*, 134 F.3d 878, 887 (7th Cir. 1998) ("Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter[;] rather it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted.").

**DISCUSSION**

I.   The Laches Defense

Under 35 U.S.C. § 282, laches is an equitable defense that bars recovery by the plaintiff for any damages incurred before the initiation of the infringement suit. *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1028 (Fed. Cir. 1992) (en banc). Laches requires proof that

the patentee unreasonably and inexcusably delayed filing suit and that the delay resulted in material prejudice to the defendant. *Wanlass v. GE*, 148 F.3d 1334, 1337 (Fed. Cir. 1998). A presumption of laches arises when more than six years has elapsed between the time the plaintiff knew or should have known of the alleged infringing activity and the time of filing suit. *Aukerman*, 960 F.2d at 1028. When the presumption is in effect, the court infers unreasonable delay and prejudice from the length of the delay, and the burden going forward with the evidence shifts to the plaintiff. *Id*. When the presumption does not arise, the party claiming laches bears the burden of proving that the delay was unreasonable and inexcusable, and that it materially prejudiced the party claiming laches. *Id*. The period of delay begins at the time the patentee had actual or constructive knowledge of the defendant's potentially infringing activities. *General Electric*, 148 F.3d at 1337.

The issue of laches is committed to the sound discretion of the court. *Aukerman*, 960 F.2d at 1032. Because the nature of the laches defense is fact-intensive, summary judgment often will be inappropriate, but may be granted under some circumstances. *Rockwell International Corp. v. SDL, Inc.*, 103 F. Supp. 2d 1192, 1196 (N.D. Ca. 2000) (denying summary judgment on laches defense); *see also Wanlass v. Fedders Corp*., 145 F.3d 1461, 1464 (Fed. Cir. 1998).

Plaintiff filed the instant action April 12, 2006. Thus, to trigger the presumption, defendant must show the absence of genuine disputes as to whether plaintiff knew or should have known of the alleged infringement on or before April 12, 2000. *Rockwell*, 103 F. Supp. 2d at 1196. The parties do not suggest a hard and fast rule regarding the level of knowledge requisite to trigger laches, nor does the equitable nature of laches generally warrant such mechanical rules. *Id.* at 1197; *see also Aukerman*, 960 F.2d at 1034. Integrated "must have had more than a mere suspicion but less than absolute assurance of defendant's alleged infringement in order to activate the laches

4

clock." *Id*.

USA argues that Stack and John, co-owners of the '488 patent, have had actual knowledge of the accused product since March 1999 and 1996, respectively, and that Stack's knowledge should be attributed to John, and thus, Integrated. If USA is correct that Integrated knew or should have known of its alleged infringement more than six years before it filed the instant lawsuit, a presumption of laches arises. Integrated, of course, asserts that neither Stack nor John knew that the USA product infringed on the '488 patent until shortly before filing this lawsuit. For the reasons discussed below, Integrated has raised triable issues of material fact concerning when it knew or should have known about USA's alleged use of the '488 patent, and therefore the presumption does not apply and summary judgment is denied.

<u>John's actual or constructive knowledge of the alleged infringement</u>

USA argues that John had sufficient knowledge of USA's product to allege infringement prior to April 2000 based on: (1) Stack's knowledge arising out of his ownership of Business Forms Sales; (2) John's conversations with Brian Wooley in 1996; (3) John's conversations with Chuck Casagrande in 1996; (4) John's work with AmeriPrint from 1997-1998; and (5) John's attendance at trade shows in October 1998.[4] USA further asserts that its use of the accused product was open and notorious in the industry. Integrated responds that neither Stack nor John had actual or constructive knowledge that the USA product infringed on the '488 patent until 2005. Resp. p. 2. It was only then that John became aware of possible infringement and began trying to obtain samples of integrated card products so that he could test them and determine whether they actually

---

[4] USA argues that Gary St. Onge of Libman Business Forms made a sales call on John at his home on August 18, 2000. Incidentally, because Integrated filed its claim on April 12, 2006 the presumption arises only if it knew or should have known of the accused product before April 12, 2000. Nevertheless, it is undisputed that John didn't learn about USA products from St. Onge. Def. Resp. 56.1 ¶ 12.

5

infringed on the '488 patent. Moreover, John denies that Wooley, Casagrande, and Schulty told him that USA was infringing on the '488 patent and denies that he attended the Baltimore tradeshow in 1998.

Integrated has raised questions of fact regarding each of these alleged sources of John's knowledge. First, there are genuine issues of disputed fact regarding whether Stack knew that the '488 was being infringed. In 1993, John stated a company called Tri-Graphics and, together with partners Stack and Bob Van Hyfte ("Van Hyfte"), made integrated cards using the '488 patent. Pltf. Resp. 56.1 ¶ 14, 15. USA asserts that Stack and Van Hyfte knew of the existence of the accused product because Stack receive quotes from USA for integrated cards in June, 2001 and Van Hyfte purchased integrated cards from USA from 1997 through 1999. However, Stack denies requesting a specification, denies knowing that USA was in that business or that he was aware that they were allegedly using the potentially infringing integrated card product. Pltf. Resp. 56.1 ¶ 61. Moreover, Integrated denies that the product identified in the quotes automatically imputes knowledge to Stack because the term "integrated card" can be used to describe a card having many different constructions and not the construction used in the '488 product. *Id*.

Regarding Van Hyfte, USA argues that Van Hyfte purchased integrated cards from 1997 to 1999 and, given his close relationship with Stack, must have told Stack about the potential infringement. However, there was no evidence that Van Hyfte discussed his purchases for his company Metro Graphx with Stack or John nor did USA prove that the purchase orders showing Metro Graphx's purchases from USA referenced the same type of integrated card as the '488 patent. Pltf. Resp. 56.1 ¶ 56.

Second, USA argues that Brian Wooley, a pressman for Tri-Graphics, told John that USA

6

made integrated card products. Wooley worked for USA during the time in which it sold the alleged infringing integrated card. Pltf. Resp. 56.1 ¶ 17. However, whether Wooley told John that USA made integrated cards when Wooley was employed by Tri-Graphics is disputed. Pltf. Resp. 56.1 ¶ 20.

Third, it is disputed whether in June or July, 1996, Chuck Casagrande ("Casagrande"), who owned Precision Coated Products ("Precision"), sent a quote to John at Tri-Graphics at John's request with three options for laminating integrated cards, including the light lift dry product used only to make integrated cards. Pltf. Resp. 56.1 ¶ 22, 23. Similarly, the parties dispute whether Casagrande made a sales call and sent several quotes to John at Tri-Graphics after John contacted Precision asking for laminates. Pltf. Resp. 56.1 ¶ 24. John denies that Casagrande showed him USA integrated cards during the sales visit. Pltf. Resp. 56.1 ¶ 25.

USA argues that John had notice of USA's use of the accused product in January 1998 because he showed Jim Schulty, President of AmeriPrint Corp., a business plan that discussed what others were doing in the integrated card industry. Whether the plan discusses the accused product is disputed and John maintains that it was drafted because he was pursuing patent protection for a piece of label-making equipment that was an improvement over a different kind of affixing equipment. Pltf. Resp. 56.1 ¶ 32. Though John promoted integrated cards and the named product "Americards" and also attended trade shows during this time period, there was no evidence that USA's accused product was displayed at the trade shows or that John was aware of every competitor in the industry during this time period. Pltf. Resp. 56.1 ¶ 27.

Additionally, USA argues that John Walter McKillip ("John W."), Vice President of Sales for USA, attended a trade show in Baltimore in October 1998 and worked at USA's booth with Janet

Storjohann. According to John W. and Storjohann, John visited USA's both, introduced himself to John W. as his uncle, and took a sample pack of integrated cards. Whether John actually attended the trade show, however, is disputed. Pltf. Resp. 56.1 ¶ 63; Def. Resp. 56.1 ¶ 14-15.

USA also argues that its use of the accused product was open and notorious in the industry and that John, as an active figure in the industry since the 1960s, should have known of USA's open and notorious allegedly infringing activities by April, 2000. However, it is disputed whether John was an "active figure in the industry" or simply a "small" and "independent" businessman. Pltf. Resp. 56.1 ¶ 53-55, 77; Def. Resp. 56.1 ¶ 1, 4-5, 28. The existence of this dispute coupled with the fact that it is disputed whether the '488 integrated card is easily testable distinguishes this case from *Wanless* and *Hall*. *See Wanless*, 148 F.3d at 1339; (patentee's claims were barred by laches because the defendant's "notorious sale of easily testable products," air conditioners, gave the patentee the opportunity to discover the alleged infringement earlier); *see also Hall v. Aqua Queen Mfg.*, 93 F.3d 1548 (Fed. Cir. 1996) (patent involved an easily testable product, a waterbed and Hall was a central and active figure in the waterbed industry); *see also IXYS Corp. v. Advanced Power Technology, Inc.*, 321 F. Supp. 2d 1156, 1161 (N.D. 2004) (denying summary judgment on laches where technology made it necessary to "actually slice the device open and examine its component structure under a microscope.").

Finally, courts impose a duty on patentees to police their rights and a patentee is charged with such knowledge as it might have obtained on reasonable, diligent inquiry. *See General Electric*, 148 F.3d at 1338; *see also Rockwell*, 103 F. Supp. at 1199. "If a patentee knows of the existence of a product or device that (i) embodies technology similar to that for which he holds a patent and (ii) uses that similar technology to accomplish a similar objective, he has a duty to

8

examine the product or device more closely to ascertain whether it infringes his patent." *Odetics, Inc. v. Storage Tech. Corp.*, 919 F. Supp. 911, 917-18 (E.D. Va. 1996) (vacated on other grounds). While the evidence casts doubt on John's testimony that he diligently policed the '488 patent[5], the Court will not draw inferences against the non-movant nor make credibility determinations at the summary judgment stage. *See Wanless*, 145 F.3d at 1466-67 (district court reversed for drawing inferences about plaintiff's state of mind against the non-movant and for making impermissible credibility determinations at the summary judgment stage).

USA has failed to show the absence of genuine issues of material fact whether John knew or should have known of defendant's alleged infringement before April 12, 2000. USA suggests that plaintiff is simply not credible on the issue of his knowledge. The credibility of witnesses, however, cannot be resolved on summary judgment. *Abdullahi v. City of Madison*, 423 F.3d 762, 2005 U.S. App. LEXIS 19580, 2005 WL 2179827, at *9 (7th Cir. 2005). Accordingly, the six-year presumption does not apply to the instant case.

Without the benefit of the six-year presumption, the burden remains on USA to establish the absence of a disputed issue of material fact whether plaintiff's delay was unreasonable and

---

[5] For example, John attended an October 2002 trade show but chose to look at the girls at the trade show instead of looking at competitor's booths. Pltf. Resp. 56.1 ¶ 37. In general, John didn't look at competitor's booths when he attended industry trade shows. Pltf. Resp. 56.1 ¶ 37. While employed at American Stencil, John was not concerned with what competitors were doing because he "didn't care" and did not police the industry for products that may have infringed on any of his patents because he had "better things to do." Pltf. Resp. 56.1 ¶ 35. In 1993, American Stencil, John's company, sued USA for patent infringement involving another product but made no efforts it the following years to monitor what USA was selling to its customers. Pltf. Resp. 56.1 ¶ 36. Yet, while John didn't "peek through windows to find out what someone else is doing," he attests that the '488 patent must be tested by taking a physical sample to determine infringement and that he is absolutely concerned with whether others infringe on his products. Def. Resp. 56.1 ¶ 6. In light of the existence of disputed facts, the Court will not draw inferences against the non-movant regarding John's credibility or his state of mind. However, whether John adequately policed his rights will certainly be considered at trial.

inexcusable, and whether defendant suffered either economic or evidentiary prejudice that would have been avoided had plaintiff filed suit earlier. *General Electric*, 148 F.3d at 1337; *Aukerman*, 960 F.2d at 1028. Here, Integrated has raised triable issues of material fact that it filed the instant action approximately one year after it learned that there may be infringements of the '488 patent and defendant does not argue that a one year delay is unreasonable or that it harmed USA. Def. Resp. 56.1 ¶ 5. In fact, USA asserts that it suffered prejudice as a result of investments related to integrated cards "since it started to sell [them]" and that it "reduced its efforts in selling the allegedly infringing card" since October 2005. Pltf. Resp. 56.1 ¶ 78, 82; Memorandum, p. 18.

Integrated also argues that the court should deny the motion for summary judgment because USA has failed to offer any evidence of either economic or evidentiary prejudice, as required to establish a laches defense. In particular, Integrated argues that USA fails to establish that its increased expenditures on the development and marketing of the accused product were related to the alleged delay and not a change in position or a business decision to capitalize on a market opportunity. *See Hemstreet v. Computer Entry Sys. Corp.*, 972 F.2d 1290, 1294 (Fed. Cir. 1992) (nexus must be shown between the patentee's delay in filing suit and the expenditures; the alleged infringer must change his position "because of and as a result of the delay."). Integrated also asserts that USA fails to establish that as a result of missing evidence, it cannot put on a fair defense. "Conclusory statements that there are missing witnesses, that witnesses' memories have lessened, and that there is missing documentary evidence, is not sufficient." *Meyers v. Asics Corp.*, 974 F.2d 1304, 1308 (Fed. Cir. 1992). Because the court denies summary judgment on laches, it need not resolve the prejudice issue at this stage. The court notes, however, that questions of disputed material fact regarding the prejudice element of the laches defense should be addressed during the

bifurcated bench trial on laches, discussed below.

Accordingly, without the benefit of the six-year presumption and with disputed facts about prejudice, defendant has failed to establish the required elements of the laches affirmative defense. *See Hemstreet v. Scan Optics, Inc.*, 1992 U.S. Dist. LEXIS 18393, 1992 WL 368059 (N.D. Ill. Dec. 3, 1992) (denying summary judgment on laches because disputed issues regarding when the patentee knew or should have known of the infringement). Whether the defense of laches applies is a legal or equitable question for the court. *Town of Munster, Ind. v Sherwin-Williams Co., Inc.*, 27 F.3d 1268, 1269 (7th Cir. 1994). Given the time and expense required to litigate a patent infringement claim, a bench trial on laches before proceeding to issues on infringement is in the interest of both the parties and the court. *See PSN Ill., Inc. v. Ivoclar Vivadent, Inc.*, 398 F. Supp. 2d 902, 911 (N.D. Ill. 2005); *citing Aero Products Int'l, Inc. v. Intex Recreation Corp.*, 2004 U.S. Dist. LEXIS 12899, 2004 WL 1557942, at *1 (N.D. Ill. July 9, 2004) (jury trial held in patent case, but issue of whether defense of laches applies reserved for court's determination). The court will address laches, including: (1) if the six-year presumption applies[6]; and (2) if the presumption does not apply, whether Integrated's delay was unreasonable and inexcusable from the length of time that it knew or reasonably should have known of its claims against USA and whether USA has established prejudice. Additionally, the Court will address disputed issues regarding whether John, and thus, Integrated, was willfully or negligently oblivious to the activities of others in the industry, including USA. Pltf. Resp. 56.1 ¶ 35; Def. Resp. 56.1 ¶¶ 2, 17, 24, 40, 55, 77, 28, 30, 40; *see also Beam Laser Systems, Inc. v. Cox Comm., Inc.*, 144 F. Supp. 464, 470-72 ( E.D. Va. 2001); *General Electric*, 148

---

[6] The parties are further directed to address the issue of whether the '488 product is easily testable and as to all of the alleged instances when Stack or John were given notice of the alleged infringement, whether the actual infringing product, namely, the '488 product, was discussed or shown to them and not some other type of integrated card.

F.3d at 1336.

II.     Equitable Estoppel

USA's Motion for Summary Judgment on the basis of estoppel fails for the same reasons as its motion on the basis of laches. USA argues that Integrated should be equitably estopped from claiming that USA infringed the '488 patent. In order for an equitable estoppel defense to bar a patent infringement claim, the alleged infringer must show that: (1) the patentee led the alleged infringer to reasonably infer that the patentee would not enforce its patent; (2) the alleged infringer relied on that conduct; and (3) the patentee suffered material injury as a consequence of that reliance. *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1028 (Fed. Cir. 1992). Reliance by the other party as well as prejudice are required in order to estop the patentee from later suing. *Id*. at 1042-43. The issue of estoppel is committed to the sound discretion of the court. *Aukerman*, 960 F.2d at 1041.

Turning to the first element, USA does not argue that John or others made misleading statements that led it to infer that Integrated did not intend to enforce the '488 patent. Rather, USA argues that John, having either actual or constructive knowledge of the accused product, made a strategic decision to "do nothing" until October 2005 when John sent USA a cease and desist letter. During John's alleged affirmatively misleading 10-year period of silence, USA asserts that it further invested in the accused product. As such, USA's argument is premised upon the presumption that John had actual or constructive knowledge of the '488 prior to 2005 when it sent the cease and desist letter to USA. Because this Court has already concluded that there is a genuine issue of material fact regarding John's actual or contractive knowledge of the patent, USA's estoppel argument is denied. That said, a patentee's inaction can constitute "misleading conduct' when coupled with other factors.

12

*Id.* at 1042. As with the laches issues, a bench trial on estoppel before proceeding to issues on infringement is in the interest of both the parties and the court. The court will address equitable estoppel, including: (1) Integrated's actual or constructive knowledge of the accused product; (2) assuming John knew or should have known of USA's potentially infringing conduct prior to October 2005, whether his inaction constituted misleading conduct; (3) whether USA reasonably relied on that conduct; and (4) whether USA suffered material injury as a consequence of that reliance.

Finally, USA argues that John in an "inherently incredible witness" and that the instant suit was filed for an improper purpose– namely, John's ancient grudge against his brother Steve. John and Steve's credibility will be judged at trial.

III.     Conclusion and Order

For the reasons stated above, the court denies defendant's motion for summary judgment on laches.[7] A status hearing on this matter is set for August 20, 2008 at 9:00 a.m. The parties are directed to be prepared to discuss pretrial preparation for a bifurcated bench trial on laches and estoppel, and to set a trial date.

So ordered.

_____
Virginia M. Kendall, United States District Judge
Northern District of Illinois

Date: August 8, 2008

---

[7] USA's Motion to Strike Integrated Response to its Statement of Fact (Dk. 90) is granted in part and denied in part consistent with this order. Integrated's Motion to Strike Exhibit SS is granted. (Dk. 85). Exhibit SS contains twenty-six pages of attorney argument that should have been included in its Reply brief. *See* Local Rule 7.1*; see also Solaia Tech. LLC v. ArvinMeritor, Inc.*, 361 F. Supp. 2d 797, 817 (N.D. Ill. 2005); *Rochlin v. Cincinnati Ins. Co.*, 2003 U.S. Dist. LEXIS 13759, *23-24 (S.D. Ind. July 8, 2003).