IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| INTEGRATED CARDS, L.L.C., | ) |
|     PLAINTIFF/COUNTER-DEFENDANT, | ) Civil Action No.: 06 C 2071 |
| v. | ) The Honorable Virginia M. Kendall |
| MCKILLIP INDUSTRIES, INC. D/B/A USA/DOCUFINISH, | ) Magistrate Judge Brown |
|     DEFENDANT/COUNTER-PLAINTIFF. | ) **PLAINTIFF'S MOTION UNDER FED. R. CIV. P. 52(C) FOR JUDGMENT AS A MATTER OF LAW AGAINST DEFENDANT ON AFFIRMATIVE DEFENSE OF ESTOPPEL AND MEMORANDUM IN SUPPORT** |

### I. Introduction

Plaintiff, Integrated Cards, L.L.C. ("Integrated Cards"), moves for entry of judgment against Defendant, McKillip Industries, Inc. d/b/a USA/Docufinish ("Docufinish") with respect to the affirmative defense of estoppel. Docufinish bears the burden of proving each of the elements of an equitable estoppel defense but has failed to do so.

As an equitable defense, estoppel was tried to the Court, and Docufinish has rested its case. Rule 52(c) provides as follows:

> If a party has been fully heard on an issue during a nonjury trial and the court finds against the party on that issue, the court may enter judgment against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

Because Docufinish has failed to prove any of the essential elements of estoppel during its case-in-chief, judgment as a matter of law dismissing this defense under Fed. R. Civ. P. 52(c) should be granted.

### II. Applicable Legal Standards

In this patent infringement case, Docufinish needed to prove each of three elements to establish a defense of equitable estoppel:

> (i) the patentee must communicate to the accused infringer (by words, conduct or silence) that the patentee will not pursue an infringement claim; (ii) the accused infringer must rely on that communication; and (iii) the accused infringer must establish that

it would be materially prejudiced if the patentee is now permitted to proceed with the infringement claim.

*B. Braun Med. Inc. v. Abbott Labs.*, 124 F.3d 1419, 1425 (Fed. Cir. 1997) (citing *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1041-43 (Fed. Cir. 1992)).

### III.     Docufinish Has Failed to Prove Any of the Three Elements of Estoppel

#### A.     Docufinish Did Not Establish the "Communication" Element

The Federal Circuit has explained the first required element of an estoppel defense as follows:

> The first element of equitable estoppel concerns the statements or conduct of the patentee which must 'communicate something in a misleading way.' The 'something' with which…the vast majority of equitable estoppel cases in the patent field is concerned, is that the accused infringer will not be disturbed by the plaintiff patentee in the activities in which the former is currently engaged. The patentee's conduct must have supported an inference that the patentee did not intend to press an infringement claim against the alleged infringer.…In the most common situation, the patentee specifically objects to the activities currently asserted as infringement in the suit and then does not follow up for years.

*Aukerman*, 960 F.2d at 1042.

Docufinish offered no evidence of any affirmative communication as described in *Aukerman*, such as a "specific objection," from the owners of the patent-in-suit regarding the patent-in-suit in which infringement was alleged, or any other affirmative statement or action which could possibly have been taken by Docufinish as giving rise to a knowing acquiescence in Defendant's willful infringement. Thus, Docufinish must necessarily rely solely upon alleged inaction or silence on the part of the current or prior owners of the patent-in-suit. But silence is not enough to prove this element, at least where (as here) there has been no prior threat to enforce the patents. "In the cases that have applied intentionally misleading silence in the patent infringement context, a patentee threatened immediate or vigorous enforcement of its patent right but then did nothing for an unreasonably long time." *Meyers v. Asics Corp.*, 974 F.2d 1304, 1308 (Fed. Cir. 1992) (citation omitted).

Docufinish presented no evidence of being threatened with enforcement of the patent-in-suit prior to the commencement of this action.

2

For an estoppel to arise where the alleged misleading conduct is inaction, the "inaction must be combined with other facts respecting the relationship or contacts between the parties to give rise to the necessary inference that the claim against the defendant is abandoned." *Aukerman*, 960 F.2d at 1042. In other words, "mere silence must be accompanied by some other factor which indicates that the silence was sufficiently misleading as to amount to bad faith." *Hemstreet v. Computer Entry Sys. Corp.*, 972 F.2d 1290, 1295 (Fed. Cir. 1992).

An estoppel does not automatically arise even where the patentee has knowledge of the infringing activity, because awareness of the infringing activity alone is not sufficient to render inaction misleading. *R2 Med. Sys., Inc. v. Katecho, Inc.*, 931 F. Supp. 1397, 1416 (N.D. Ill. 1996). "Instead, courts have required communication between the parties either somehow encouraging the challenged activity, or indicating an intent to enforce the patent rights followed by inaction." *Id.* Thus, the Court can decide that Docufinish failed to prove this element of estoppel without deciding whether the owners of the patent-in-suit knew or should have known of Docufinish's infringement and brought suit earlier.

Cases addressing the circumstance where silence, accompanied by some other factor, can create an estoppel clearly illustrate what Docufinish failed to show in its affirmative case here. For example, there is no evidence of (1) a prior accusation of infringement of the patent-in-suit followed by silence (*see Scholle Corp. v. Blackhawk Molding Co.*, 133 F.3d 1469, 1472 (Fed. Cir. 1998)); (2) Docufinish asking whether the accused products infringed the patent-in-suit followed by silence (*Electromotive Div. of General Motors v. Transp. Sys. Div. of General Electric Co.*, 275 F. Supp. 2d 850, 858-59 (E.D. Mich. 2003)); or (3) failure of the owners of the patent-in-suit to respond to a warning letter and actions affirmatively acknowledging the accused infringer's right to market its product without concern (*Stryker Corp. v. Zimmer, Inc.*, 741 F. Supp. 509, 514-515 (D.N.J. 1990)).

In sum, Docufinish has shown no relationship or contacts between the parties that could possibly give rise to the necessary inference from subsequent silence that the infringement claim against Docufinish was intentionally abandoned. Docufinish proved -- at most -- that it relied upon silence alone, but silence alone is not enough. But even on that subject, Docufinish proffered only conclusory testimony that is not, particularly without corroboration, sufficient to prove this element of estoppel. Specifically, Stephen McKillip testified as follows (responding to leading questions to which plaintiff objected):

> Q: Steve, did you rely on the fact that no one threatened you with infringement, in your understanding – I mean, in your belief that you wouldn't get infringed [sic]?
>
> ***
>
> Q: That you wouldn't be sued for infringement.
>
> A: Yes.

(67:13-68:10.)[1]  These questions and answer make explicit that Docufinish's estoppel defense rests entirely on the patent owners' alleged silence (*e.g.,* "no one threatened you with infringement").

Further, there is a complete lack of admissible evidence corroborating the conclusory claim of reliance. Stephen McKillip admitted that he never called John J. McKillip to ask him if it was fine to make the integrated card products. (169:11-14.) Stephen McKillip only assumed that Mr. Stack did not have a problem with Docufinish proceeding to manufacture infringing integrated card products. (172:16-19.) Docufinish made no effort secure legal counsel to obtain an opinion on whether the patent-in-suit might cover its process or product when it learned of the patent. (173:8-16.)  Under the law as it stood during years of Docufinish's infringement, the failure to obtain a legal opinion of non-infringement is evidence of willful infringement, not a defense. *See SRI Intern. v. Advanced Tech. Labs.*, 127 F.3d 1462, 1468 (Fed. Cir. 1997) ("Prudent behavior generally requires that competent legal advice was obtained before the commencement of the infringing activity." (citations omitted)).

Further, Stephen McKillip admittedly did not read the patent in its entirety prior to this lawsuit. (168:7-169:3.) Docufinish went ahead with production of integrated card products from the beginning knowing that there was a patent and not reading it:

> Q: You went ahead with your own production of integrated cards from the beginning knowing that there was a patent and not reading it; is that correct?
>
> A: I knew that he had a patent for integrated cards, yes.

(167:20-23.) Stephen McKillip had actual knowledge of the patent-in-suit due to his attendance at the auction in October 1997 where the patent was actually offered for sale, but Stephen conspicuously did not testify that he informed his brother of his infringing activity. Had he done

---

[1] Cited pages of the testimony are attached as Exhibit A hereto.

so, subsequent silence by the patent owners might hypothetically have been misleading. But no such evidence was proffered (and could not truthfully be given).

### B. Docufinish Did Not Proffer Sufficient Evidence to Prove Reliance

Reliance is a separate element essential to establish an equitable estoppel defense. *Gasser Chair Co., Inc. v. Infanti Chair Mfg. Corp.*, 60 F.3d 770, 776 (Fed. Cir. 1995). The infringer bears the burden to prove that it "substantially relied on the misleading conduct of the [plaintiff] in connection with taking some action." *Aukerman*, 960 F.2d at 1042–43. "To show reliance, the infringer must have had a relationship or communication with the plaintiff which lulls the infringer into a sense of security in going ahead with [its investments]." *Gasser*, 60 F.3d at 776 (alteration in original) (quoting *Aukerman*, 960 F.2d at 1042–43).

Docufinish did not present sufficient evidence showing that Docufinish **relied** on any relationship or communication (or lack thereof) from John J. McKillip or Stanley J. Stack. Here, too, Docufinish proffered only the entirely conclusory testimony of Stephen McKillip in response to an objectionable leading question:

> Q: …did you rely on John's failure to sue you on the '488 patent in continuing to market and sell integrated cards?
> ***
> A: Yes

(128:22-129:11.) This type of conclusory "evidence" of alleged reliance is legally insufficient, particularly when it is not corroborated by other evidence tending to prove the truth of the conclusory statement. *See Gasser*, 60 F.3d at 776; *Meyers*, 974 F.2d at 1309 ("Defendants make numerous conclusory assertions that they relied on Meyers conduct, but they have not presented undisputed facts to show that they did….Furthermore, defendants have not shown that they would have altered their conduct if Meyers had sued earlier.").

Even if Docufinish had offered probative evidence of reliance, it did not offer any evidence showing the required *nexus* between Integrated Cards' silence and Docufinish's alleged reliance on it. Defendants only showed a consistent course of infringing business for several years (all during a period when Docufinish indisputably knew that at least one of the patent owners likely had no financial ability to enforce the patents due to auction of assets of Tri-Graphics and American Stencil), which continued unabated after this lawsuit was commenced. In similar circumstances, the court in *James River Corp. v. Hallmark Cards, Inc.* found that the Defendant failed to meet its burden of showing reliance for two reasons:

5

> First, the evidence does not establish a communication or relationship which could reasonably have given Hallmark a sense of security…. Second, and more importantly, the record does not establish a nexus between James River's conduct and Hallmark's actions. The case law clearly indicates that 'reliance' requires a causal connection *between* the sense of security and the action taken in reliance upon it, not just coexistence of the two.

915 F. Supp. 968, 983 (E.D. Wis. 1996) (emphasis in original). As in *James River*, 915 F. Supp. at 979, Docufinish's taking of the patent owners' silence as acquiescence was nothing more a business gamble -- made with the knowledge of John J. McKillip's insolvency in 1997-98 -- that patentee would not sue.

### C. Docufinish Did Not Prove Legally Cognizable Prejudice

Material prejudice resulting from delay, "may be either economic or evidentiary." *Aukerman*, 960 F.3d at 1033. The prejudice prong of the estoppel analysis is the same as that for the laches analysis. *Aukerman*, 960 F.2d at 1043. As explained below, Docufinish has failed to prove either economic or evidentiary prejudice.

#### 1. Economic Prejudice

To demonstrate economic prejudice, it is not enough that Docufinish changed its economic position by investing in the production of the accused integrated card products. *Hemstreet*, 972 F2d at 1294. If such damages necessarily constituted prejudice, then practically every estoppel or laches claim would establish material prejudice. *Aukerman*, 960 F.2d at 1033. Thus, to show economic prejudice, an element akin to causation must be shown, *i.e.*, the alleged infringer must prove that it suffered the loss of monetary investments or incurred damages which would have been prevented if the patentee had filed suit sooner. *Id.* Therefore, for Docufinish to show economic prejudice, its expenditures must have an "explicitly proven nexus to the patentee's delay in filing suit." *Hemstreet,* 972 F.2d at 1294.

"It is not enough that the alleged infringer changed his position – i.e., invested in production of the allegedly infringing device. The change must be because of and as a result of the delay, not simply a business decision to capitalize on a market opportunity." *Id*. (citing *Aukerman*, 960 F.2d at 1033). Docufinish failed to offer any evidence to suggest that it considered altering its business strategies or operations as a result of patentee's alleged action or inaction. *See Genzyme Corp. v. Atrium Med. Corp.*, 2003 U.S. Dist. LEXIS 12784, at *21 (D. Del. July 22, 2003).

6

To prove relevant economic prejudice, Docufinish needed to produce facts that, for example, show expenditures made in direct reliance upon Integrated Cards' inaction. *Id.* at \*19. Docufinish has failed to do so. There are two categories of expenditures where Docufinish attempted (and failed) to make this showing: (1) advertising and marketing; and (2) equipment. But this after-the-fact attempt to change the nature of and reason for these expenditures fell far short of establishing a direct link between the patent owners' alleged silence and Docufinish's "investments."

### a. No Prejudice Due to Advertising Expenditures

Docufinish offered evidence of its advertising and marketing expenditures, such as attending trade shows, brochures and mailings. However, it was plainly admitted that the advertising and marketing expenditures were not only for the infringing integrated card products. (151:17-20.) To the contrary, Docufinish promotes many other products at trade shows. (157:17-23.) Indeed, Docufinish clearly admitted that it would have in all probability been doing the same marketing activities from 1999 forward (reflected in Exhibit 17) even if it had not been selling integrated card products. (159:5-17.) Even in response to its counsel's leading questions, Docufinish admitted that its marketing expenses might have changed, "but not by much" and "minorly":

> Q: -- can you tell me whether -- whatever you spend on advertising, if that amount would have changed had you not promoted integrated cards?
>
> A: It would have changed, but not -- not by much.

(101:5-8.)

> Q: But would the cost have been different?
>
> A: I'm not sure what you mean. The cost of our business or…
>
> Q: Just advertising in general.
>
> A: Yeah. It would have been minorly different.

(102:6-10.) This is not surprising, given that integrated card products were less than 10 percent of Docufinish's sales, at least in 2001. (148:24-149:14.)

Moreover, the evidence of advertising expenditures offered by Docufinish includes promotion of all products, not just integrated card products:

7

> Q: …It's correct, is it not, that the expenses reflected there in that entire exhibit [Defendant's Exhibit 17], not just the one page, all are for promoting all of your products, not merely integrated cards, correct?
>
> A: Yes, we promote all of our products.
>
> Q: And if you hadn't been selling integrated cards, you still would have been doing all of these same things from 1999 forward, would you not?
>
> A: In all probability, yes.

(159:5-17.)

### b. No Prejudice Due to Equipment Expenditures

Docufinish uses four Tamarack machines and three FME machines to make integrated card products. (106:16-17; 111:21-22). The only specific date provided by Stephen McKillip for when he heard of the patent-in-suit (and also the first time he saw the patent) was in October 1997. (63:17-64:20 (DX 19).)[2] However, by that time Docufinish had already purchased all of its Tamarack machines. The first Tamarack machine was purchased in May 1993, before the application for the patent-in-suit was even filed. (DX 10.) The downpayment for the second Tamarack machine was made on December 12, 1995, merely six weeks after the patent-in-suit issued. (DX 9.) The third Tamarack machine was paid for on February 6, 1997. (DX 8.) The fourth Tamarack machine was ordered on April 30, 1997. (DX 7.) It would be impossible for Docufinish to rely on any purported silence (and to be prejudiced by the same) ***before*** it even knew of the patent-in-suit. Thus, the four Tamarack machines cannot be a basis for prejudice.

That leaves only Docufinish's argument of prejudice due to equipment purchase with respect to the three FME machines bought in 1998. However, those were purchased within months of first learning of the patent-in-suit at the October 1997 auction, and could hardly be done in reliance upon something just learned about. Moreover, the testimony clearly leads to the inference that the purchases were made because they were a good deal (118:12-19), not because of any belief that Docufinish would not get sued if they used the equipment in an infringing manner. And of course, Stephen McKillip admittedly knew that his brother's companies' assets

---

[2] Stephen McKillip admitted that he heard about the patent-in-suit from Brian Wooley in "the '90s, late '90s" (62:11-23); from Chuck Casagrande "in the 1990s also" (63:6-14).

were sold at auction in late 1997. (63:16-23; 64:6-10,) Having attended this auction and seeing the patent-in-suit put up for auction with no bidders (64:19-65:7), Docufinish soon thereafter purchased the FME equipment. There is no plausible proof that Docufinish purchased its FME equipment in 1998 in reliance on the patent owners' silence or that there was any legally cognizable prejudice causally linked to the patent owners' alleged silence in 1998.

In all events, Docufinish admitted that these same machines are also used to make integrated labels. (162:12-16; 164:6-16.) There was never any prejudice, because Docufinish was (and is) admittedly using the machines it purchases for other, non-infringing activities. The record is clear that infringing integrated cards comprise only about 10% of Docufinish's business, and thus would have purchased this equipment anyway. There is no proof of a causal link between the patent owners' alleged silence and Docufinish's equipment purchases. Hence, Docufinish failed to prove the essential prejudice element of an estoppel defense

        **c.**        **Docufinish's Conduct Since Filing of Suit Shows No Prejudice**

Docufinish's testimony conceded that, had it been sued years earlier, it would only have "considered" stopping making the infringing integrated cards. (102:10-13.) However, there is no documentary evidence supporting this conclusory testimony which, in any event, fell far short of proving affirmatively that Docufinish would have stopped the infringing conduct Moreover, the undisputed facts and admissions show that Docufinish would not have stopped its infringement.

As the case law shows, the best evidence of what Docufinish would have done if it had been sued earlier is not found in speculative, conclusory testimony prepared for trial, but rather what the objective evidence shows that Docufinish actually did when sued. And what Docufinish did was to increase its sales and fight the lawsuit, alleging noninfringement and invalidity. *See Meyers*, 974 F.2d at 1308 ("None of the defendants submitted evidence that they curtailed design and development of [the accused products] in response to Meyers' suit once it was actually filed.")

We do not here question Docufinish's right to defend the lawsuit (even though we view its defenses on the merits to be extremely weak). The point is that Docufinish's actual decision to hire two large law firms to defend the case is the best evidence of what would have happened had litigation been commenced earlier. Docufinish's actions speak louder than its prepared

9

testimony, and make entirely clear that an earlier lawsuit would not have changed things at all -- Docufinish would have continued its infringing activity and defended the case, just as it is now.

Further, the evidence not only shows Docufinish continued selling infringing integrated cards, but Docufinish also offered no proof that it changed its infringing products in response to the lawsuit, or even obtained a legal opinion on ways in which it might lawfully "design around" plaintiff's patent. Just the opposite, Docufinish admittedly has *increased* its sales of the accused integrated card products since the filing of the lawsuit:

> A: We do -- we have more -- we have some larger orders for integrated cards that we didn't have at – when I was first sued.

(104:16-18.)

"Where no evidence shows the infringer stopped selling the allegedly infringing product even after the patentee filed the complaint, a court may draw the inference that the infringer would have continued to sell the infringing product even if the patentee had brought suit earlier." *See James River*, 915 F.Supp. at 978 (citing *Meyers v. Brooks Shoe*, 912 F.2d 1459, 1463 (Fed. Cir. 1990)). "The inference may follow that the infringer acted independently of the patentee's actions." *Id.*

Docufinish's failure to offer evidence that it tried to produce a non-infringing alternative, or even obtained a legal opinion regarding ways to design around the patent, are also probative of a lack of prejudice. *See Freeman v. Gerber Prods. Co.*, 466 F. Supp. 2d 1242, 1245 (D. Kan. 2006) (defendant well aware of the potential infringement but deliberately chose not to switch to another alternative); *see also Oakwood Labs. L.L.C. v. TAP Pharm. Prods., Inc.,* 2003 U.S. Dist. LEXIS 20353, at *7–8 (N.D. Ill. Nov. 12, 2003) ("Defendants' failure to provide any evidence of an alternative scheme or plan for changing the structure of their product in the face of infringement weighs in favor of determining that the Defendants suffered no material economic prejudice.").[3]

### 2. There is No Evidentiary Prejudice

Docufinish has failed to offer any proof of evidentiary prejudice resulting from the timing of this lawsuit.

Docufinish expressly admitted that it has not ever changed its infringing products, and therefore is in no way prejudiced in proffering evidence in support of a non-infringement defense

---

[3] Those cases not cited in the Federal Reporters or Supplements are attached in Exhibit B.

for products made and sold up to six years before this lawsuit was commenced. (*See* 134:20-136:12.) Docufinish also admitted that it has not lost any business records that would prevent it from explaining its non-infringement position. (136:3-12.) That is because, as long as Docufinish has been making integrated card products, they've been doing the same thing with the same materials and machinery. (134:20-135:20.) If one wanted to know what Docufinish's manufacturing process was and what the product looked like in the year 2004 or 2000, it would be just like what they make now:

> Q: …And in that context, I think I understood your testimony correctly that for as long as you have been making integrated card products you've been doing the same thing with the same materials and same machinery; is that correct?
>
> A: Yes.
>
> Q: So that if we want to know what your manufacturing process was and what your product looked like in the year 2004 or 2000 or even back to the beginning of 1995 or 1996, we can assume it would be just like this (indicated [Defendant's Exhibit 16])?
>
> A: Yes.

(135:11-20.)

Furthermore, Docufinish admitted that it would be able to explain the sales of integrated card products going back to 2000, as well as its profits and losses from those sales:

> Q: Okay. So in terms of your ability to explain the sales of integrated cards that you've made since 2000 and the profits or losses on those sales, you would have records going back to the year 2000 that would permit your to do that, you or your accountant?
>
> A: We could find that out, I think.

(138:8-22.) Thus, Docufinish also failed to prove that it has lost any sales information from within six years prior to the filing of this suit (the maximum time period going back for which there can be liability, per 35 U.S.C. § 286) which might aid its damages defense in this case.

**IV.     Conclusion**

For the foregoing reasons, pursuant to Rule 52(c), Integrated Cards requests that the Court enter judgment against Docufinish on the affirmative defense of estoppel. Docufinish failed to prove any of the essential elements of an estoppel defense, and its bears the burden of proof to prove each one of them.

Date:  March 9, 2009             s/Jon A. Birmingham
                                 Jon A. Birmingham
                                 FITCH, EVEN, TABIN & FLANNERY
                                 120 South LaSalle Street, Suite 1600
                                 Chicago, Illinois 60603
                                 Telephone: (312) 577-7000
                                 Facsimile: (312) 577-7007
                                 *Attorneys for Integrated Cards, L.L.C.*

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing PLAINTIFF'S MOTION UNDER FED. R. CIV. P. 52(C) FOR JUDGMENT AS A MATTER OF LAW AGAINST DEFENDANT ON AFFIRMATIVE DEFENSE OF ESTOPPEL AND MEMORANDUM IN SUPPORT was caused to be served upon the following in the manner set forth below on March 9, 2009:

*Via Electronic Delivery:*
Jacqueline A. Criswell
TRESSLER, SODERSTROM, MALONEY & PRIESS
233 South Wacker Drive, Suite 2200
Chicago, Illinois 60606
(COUNSEL FOR DEFENDANT AND COUNTER CLAIMANT, MCKILLIP INDUSTRIES, INC. D/B/A USA/DOCUFINISH)


Michael P. Chu
BRINKS HOFER GILSON & LIONE
NBC Tower – Suite 3600
455 N. Cityfront Plaza Drive
Chicago, Illinois 60611-5599
(COUNSEL FOR DEFENDANT AND COUNTER CLAIMANT, MCKILLIP INDUSTRIE S, INC. D/B/A USA/DOCUFINISH)


   s/Jon A. Birmingham
*Attorney for Integrated Cards, L.L.C.*