IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| INTEGRATED CARDS, L.L.C., | ) |
| | ) Civil Action No.: 06 C 2071 |
| PLAINTIFF/COUNTER-DEFENDANT, | ) |
| | ) The Honorable Virginia M. Kendall |
| V. | ) |
| | ) Magistrate Judge Brown |
| MCKILLIP INDUSTRIES, INC. D/B/A | ) |
| USA/DOCUFINISH, | ) PLAINTIFF'S MOTION PURSUANT TO FED. R. |
| | ) CIV. P. 52(C) FOR JUDGMENT AS A MATTER |
| DEFENDANT/COUNTER-PLAINTIFF. | ) OF LAW DISMISSING AFFIRMATIVE |
| | ) DEFENSE OF LACHES AND MEMORANDUM IN |
| | ) SUPPORT |

**I.     Introduction**

Plaintiff, Integrated Cards, L.L.C. ("Integrated Cards"), moves for entry of judgment as a matter of law against Defendant, McKillip Industries, Inc. d/b/a USA/Docufinish ("Docufinish") with respect to the affirmative defense of laches. Docufinish bears the burden of proving each of the elements of a laches defense but has failed to do so.

As an equitable defense, laches was tried to the Court, and Docufinish has rested its case. Rule 52(c) provides as follows:

> If a party has been fully heard on an issue during a nonjury trial and the court finds against the party on that issue, the court may enter judgment against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

Docufinish failed during its case-in-chief to prove the essential elements of laches, and did not even present admissible evidence which could possibly be taken as sufficient to meet its burden to prove legally cognizable prejudice. Therefore, judgment as a matter of law dismissing this affirmative defense under Fed. R. Civ. P. 52(c) should be granted.

Although the Court need not address other elements of laches -- because the lack of evidence requires a finding that prejudice has not been established -- Docufinish has also failed to meet its burden on the defense of laches because it failed to show that the patent owners unreasonably delayed filing suit from a time that they actually knew or should have known of Docufinish's infringement. The evidence does not weigh in Docufinish's favor now on the issue

of knowledge. However, should Integrated Cards' rebuttal case be deemed necessary, *i.e.*, should this motion be denied or held in abeyance, the evidence will demonstrate that Docufinish cannot meet its burden on that essential element of laches either.

## II. Applicable Legal Standards

In this patent infringement case, Docufinish needed to prove two elements to establish the affirmative defense of laches:

> 1. that plaintiff delayed filing suit for an unreasonable and inexcusable length of time from the time the plaintiff knew or reasonably should have known of its claim against the defendant, and
>
> 2. the unreasonable delay operated to the prejudice or injury of the defendant.

*A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1032 (Fed. Cir. 1992). While Docufinish has failed to prove either element of laches, this motion focuses first on the failure of Docufinish to prove the "prejudice" element, because this element directly overlaps the same element of Docufinish's estoppel defense, which is briefed separately in a motion submitted contemporaneously herewith. Because no legally cognizable prejudice has been shown, the Court does not need to consider the other element of laches. For this reason, we address the lack of prejudice first, followed by discussion of the lack of proof on the first element of laches.

Laches ultimately turns on underlying factual determinations. *Hemstreet v. Computer Entry Sys. Corp.*, 972 F.2d 1290, 1292 (Fed. Cir. 1992). The defendant always has the burden of proving laches. *Id*. at 1293.

## III. Docufinish Did Not Prove Legally Cognizable Prejudice

Material prejudice resulting from delay, "may be either economic or evidentiary." *Aukerman*, 960 F.2d at 1033. The prejudice prong of the estoppel analysis is the same as that for the laches analysis. *Id.* at 1043. As explained below, Docufinish has failed to prove either type of prejudice.

### 1. Docufinish Was Not Economically Prejudiced

To demonstrate economic prejudice, it is not enough that Docufinish changed its economic position by investing in the production and marketing of the accused integrated card products. *Hemstreet*, 972 F.2d at 1294. If such expenses alone constituted legally cognizable

prejudice, then virtually every laches defense would result in a finding of material prejudice. *Aukerman*, 960 F.2d at 1033. Accordingly, the cases are clear that, to show cognizable economic prejudice, the alleged infringer must prove not only that it made monetary investments or incurred other damages, but also that these expenses would have been prevented if the patentee had filed suit sooner. *Id.* Specifically, for Docufinish to show relevant economic prejudice, it must demonstrate that the alleged delay was the proximate legal cause of its expenditures or other economic damages. That is, Docufinish's evidence must show an "explicitly proven nexus to the patentee's delay in filing suit." *Hemstreet,* 972 F.2d at 1294.

"It is not enough that the alleged infringer changed his position – i.e., invested in production of the allegedly infringing device. The change must be because of and as a result of the delay, not simply a business decision to capitalize on a market opportunity." *Id*. (citing *Aukerman*, 960 F.2d at 1033). Docufinish failed to offer any evidence to suggest that it ever considered altering its business strategies or operations as a result of patentee's alleged action or inaction. *See Genzyme Corp. v. Atrium Med. Corp.*, 2003 U.S. Dist. LEXIS 12784, at *21 (D. Del. July 22, 2003).

To prove relevant economic prejudice, Docufinish needed to produce facts that show, for example, expenditures made in direct reliance upon Integrated Cards' inaction. *Id.* at *19. Docufinish simply failed to do so. There are only two categories of expenditures where Docufinish attempted (but failed) to make this showing: (1) advertising and marketing; and (2) equipment. But this after-the-fact attempt to change the nature of and reasons for these expenditures fell far short of establishing a direct link between the patent owners' alleged silence and Docufinish's "investments."

### a. No Prejudice Due to Advertising Expenditures

Docufinish offered evidence of its advertising and marketing expenditures, such as attending trade shows, brochures and mailings. However, it was expressly admitted that the advertising and marketing expenditures were not directed only to the infringing integrated card products. (151:17-20.)[1] To the contrary, Docufinish promotes many other products at trade shows. (157:17-23.) Indeed, Docufinish clearly admitted that it would, in all probability, have been doing the very same marketing activities from 1999 forward (reflected in Exhibit 17) even if it had not been selling integrated card products. (159:5-17.) Even in response to its counsel's

---

[1] Cited pages of the transcript are attached as Exhibit A.

3

leading questions, Docufinish admitted that its marketing expenses might have changed, "but not by much":

> Q: -- can you tell me whether -- whatever you spend on advertising, if that amount would have changed had you not promoted integrated cards?
>
> A: It would have changed, but not -- not by much.

(101:5-8.)

> Q: But would the cost have been different?
>
> A: I'm not sure what you mean. The cost of our business or…
>
> Q: Just advertising in general.
>
> A: Yeah. It would have been minorly different.

(102:6-10.) This is not surprising given that integrated card products were less than 10 percent of Docufinish's sales, at least in 2001 and annually up to the time this lawsuit was filed. (148:24-149:14; see also Defendant's Ex. 24)

Moreover, the evidence offered by Docufinish regarding its advertising expenditures includes promotion of all products, not just integrated card products:

> Q: …It's correct, is it not, that the expenses reflected there in that entire exhibit [Defendant's Exhibit 17], not just the one page, all are for promoting all of your products, not merely integrated cards, correct?
>
> A: Yes, we promote all of our products.
>
> Q: And if you hadn't been selling integrated cards, you still would have been doing all of these same things from 1999 forward, would you not?
>
> A: In all probability, yes.

(159:5-17.)

### b. No Prejudice Due to Equipment Expenditures

Docufinish uses four Tamarack machines and three FME machines to make integrated card products. (106:16-17; 111:21-22). The only specific date provided by Stephen McKillip for when he heard of the patent-in-suit (and also the first time he saw the patent) was in October

4

1997. (63:17-64:20 (DX 19).)[2] However, by that time Docufinish had already purchased all of its Tamarack machines, so there is no logical basis on which Docufinish could claim that its purchases of the Tamarack machines was caused by a purported delay in filing suit. The first Tamarack machine was purchased in May 1993, before the application for the patent-in-suit was even filed. (DX 10.) The downpayment for the second Tamarack machine was made on December 12, 1995, merely six weeks after the patent-in-suit issued. (DX 9.) The third Tamarack machine was paid for on February 6, 1997. (DX 8.) The fourth Tamarack machine was ordered on April 30, 1997. (DX 7.) It would be impossible for Docufinish to rely on any purported silence (and to be prejudiced by the same) before it even know of the patent-in-suit. Thus, the four Tamarack machines cannot be a basis for prejudice.

That leaves only Docufinish's argument of prejudice due to equipment purchase with respect to the three FME machines bought in 1998. However, those were purchased within just a few months of first learning of the patent-in-suit at the October 1997 auction, and could hardly be done in reliance upon the patentee's silence for such a short time, and something it (Docufinish) had just learned about. Moreover, the testimony clearly leads to the inference that the purchases were made because they were a good deal (118:12-19), not because of any belief that Docufinish would not get sued if they used the equipment in an infringing manner.

Moreover, Docufinish admitted that these same FME machines are also used to make integrated labels. (162:12-16; 164:6-16.) Since the FME machines are used for other (apparently non-infringing) purposes, there can be no causal connection between alleged delay in bringing suit relating to infringing integrated cards and the decision to purchase the machines, and there is no prejudice.

   c. **Docufinish's Conduct Since the Actual Filing of Suit Proves the Lack of Prejudice**

Docufinish's testimony conceded that, had it been sued years earlier, it would only have "considered" stopping making the infringing integrated cards. (102:10-13.) However, the testimony was far short of stating affirmatively that Docufinish would have stopped the

---

[2]   Stephen McKillip testified that he heard about the patent-in-suit from Brian Wooley in "the '90s, late '90s" (62:11-23); from Chuck Casagrande "in the 1990s also" (63:6-14).

5

infringing conduct, and the undisputed facts and admissions show that Docufinish would not have stopped its infringement.

As the case law shows, the best evidence of what Docufinish would have done if it had been sued earlier is not found in speculative, conclusory testimony prepared for trial, but rather what the objective evidence shows that Docufinish actually did when sued. And what Docufinish did was to increase its sales and fight the lawsuit, alleging noninfringement and invalidity. *See Meyers v. Asics Corp*, 974 F.2d 1304, 1308 (Fed. Cir. 1992) ("None of the defendants submitted evidence that they curtailed design and development of [the accused products] in response to Meyers' suit once it was actually filed.")

We do not here question Docufinish's right to defend the lawsuit (even though we view its defenses on the merits to be extremely weak). The point is that Docufinish's actual decision to hire two large law firms to defend the case is the best evidence of what would have happened had litigation been commenced earlier. Docufinish's actions speak louder than its prepared testimony, and make entirely clear that an earlier lawsuit would not have changed things at all - - Docufinish would have continued its infringing activity and defended the case, just as it is now.

The evidence does not show Docufinish stopped selling integrated cards, or changed its infringing products in response to the lawsuit. Just the opposite, Docufinish admittedly has ***increased*** its sales of the accused integrated card products since the filing of the lawsuit:

> A: We do -- we have more -- we have some larger orders for integrated cards that we didn't have at -- when I was first sued.

(104:16-18.)

"Where no evidence shows the infringer stopped selling the allegedly infringing product even after the patentee filed the complaint, a court may draw the inference that the infringer would have continued to sell the infringing product even if the patentee had brought suit earlier." *See James River Corp. v. Hallmark Cards, Inc.*, 915 F.Supp. 968, 978 (E.D. Wis. 1996) (citing *Meyers v. Brooks Shoe*, 912 F.2d 1459, 1463 (Fed. Cir. 1990)). "The inference may follow that the infringer acted independently of the patentee's actions." *Id.*

Docufinish also offered no evidence that it tried to produce a non-infringing alternative, or even obtained a legal opinion regarding ways to design around the patent. This failure is also probative of a lack of prejudice. *See Freeman v. Gerber Prods. Co.*, 466 F. Supp. 2d 1242, 1245 (D. Kan. 2006) (court found defendant well aware of the potential infringement but deliberately

6

chose not to switch to another alternative); *see also Oakwood Labs. L.L.C. v. TAP Pharm. Prods., Inc.,* 2003 U.S. Dist. LEXIS 20353, at *7–8 (N.D. Ill. Nov. 13, 2003) ("Defendants' failure to provide any evidence of an alternative scheme or plan for changing the structure of their product in the face of infringement weighs in favor of determining that the Defendants suffered no material economic prejudice.").[3]

### 2. There is No Evidentiary Prejudice

Docufinish has failed to offer any proof of evidentiary prejudice resulting from the timing of this lawsuit. And the admissions of its witnesses prove there is none.

Docufinish expressly admitted that it has never changed its infringing products and, therefore, is in no way prejudiced in proffering evidence in support of a non-infringement defense for products made and sold up to six years before this lawsuit was commenced. (*See* 134:20-136:12.) Docufinish also admitted that it has not lost any business records that would prevent it from explaining its non-infringement position. (136:3-12.) That is because as long as Docufinish has been making integrated card products, they've been doing the same thing with the same materials and machinery. (134:20-135:20.) Defendants' ability to defend the infringement claim is entirely unaffected, because its manufacturing process and what the product looked like in the year 2004 or 2000 are the same as today as they have been for many years:

> Q: …And in that context, I think I understood your testimony correctly that for as long as you have been making integrated card products you've been doing the same thing with the same materials and same machinery; is that correct?
>
> A: Yes.
>
> Q: So that if we want to know what your manufacturing process was and what your product looked like in the year 2004 or 2000 or even back to the beginning of 1995 or 1996, we can assume it would be just like this (indicated [Defendant's Exhibit 16])?
>
> A: Yes.

(135:11-20.)

---

[3] Cases not published in the Federal Reporters or Supplements are attached in Exhibit B.

Furthermore, Docufinish also has not been prejudiced as to its potential defenses to damages. Mr. Stephen McKillip plainly admitted that it would be able to explain the sales of integrated card products going back to 2000, as well as its profits and losses from those sales:

> Q: Okay. So in terms of your ability to explain the sales of integrated cards that you've made since 2000 and the profits or losses on those sales, you would have records going back to the year 2000 that would permit your to do that, you or your accountant?
>
> A: We could find that out, I think.

(138:8-22.) Thus, Docufinish also failed to prove that it has lost any sales or other financial information from within six years prior to the filing of this suit (the maximum time period going back for which there can be liability, per 35 U.S.C. § 286).

### 3. There is No Prejudice Regardless of Whether there is a Presumption

There is a presumption that the elements of laches are satisfied upon proving a six-year delay in filing the lawsuit. *Hemstreet*, 972 F.2d at 1293. Here, the presumption should not be deemed to apply, because Docufinish did not prove that plaintiff knew or should have known of the infringing activity more than six years before filing suit. Nevertheless, even where the presumption applies, the burden of proof does not shift; it only requires the plaintiff to come forward with evidence sufficient to raise a genuine dispute as to either delay or prejudice. *Id.* ("the presumption of laches which arises after a defendant proves a six-year delay is a 'double bursting bubble' which the plaintiff punctures with introduction of evidence sufficient to raise a genuine dispute as to either delay or prejudice."). Plaintiff here clearly presented such evidence via the admissions of Docufinish's witnesses quoted above. Thus, whether or not the presumption applies, the evidence adduced in Docufinish's own case - specifically including the conclusive admissions quoted above -- unquestionably proves a lack of prejudice.

## IV. Docufinish Has Not Proven Delay that is Unreasonable or Inexcusable

Docufinish has failed to show that the patent owners had any suspicion that Docufinish was infringing the patent-in-suit until shortly before this case was filed. Moreover, the law is clear that, while an "absolute assurance" of infringement is not necessary, more than a mere suspicion is required to start the laches clock running. Integrated Cards "must have had more than a mere suspicion … of [defendant's] alleged infringement in order to activate the laches clock." *Rockwell Int'l Corp. v. SDL, Inc.*, 103 F. Supp. 2d 1192, 1197 (N.D. Cal. 2000).

8

Although, as the Court noted in its denial of summary judgment on this subject, a patentee has some affirmative responsibility to police the marketplace, a specific duty to investigate only arises based on the actual possession of reasonably clear information tending to show infringement: "If a patentee knows of the existence of a product or device that (i) embodies technology similar to that for which he holds a patent and (ii) uses that similar technology to accomplish a similar objective, he has a duty to examine the product or device more closely to ascertain whether it infringes his patent." *Odetics, Inc. v. Storage Tech. Corp.*, 919 F. Supp. 911, 918 (E.D. Va. 1996) (vacated on other grounds). Here, there is simply no competent evidence that the patent owners knew what Docufinish was doing.

### A. The Words "Integrated Cards" Alone Do Not Create More than a Suspicion

In addressing this subject, it is essential to recall that the record clearly shows that there are multiple types of "integrated cards," not all of which infringe the patent-in-suit. The testimony cited below conclusively so proves.

The majority of the evidence presented by Docufinish on this issue was circumstantial, and there was no evidence showing that Docufinish was openly manufacturing integrated cards of the type described in the patent-in-suit. No testimony and no exhibit links John J. McKillip to a clearly infringing product, or knowledge of same, until the time this civil action was filed.

Docufinish's circumstantial evidence includes little more than snippets of business activities in which nothing specific about Docufinish's particular products or means of making them was revealed. The isolated incidents included John J. McKillip's attendance at a half-dozen or fewer trade shows in a several year period, his alleged receipt of several trade magazines, a non-specific product quotation allegedly sent to Mr. Stack's former company, and a supposed conversation with Brian Wooley, a pressman at Tri-Graphics, in 1996. (Many of these incidents will be disproven or explained if John McKillip is brought back to the stand for plaintiff's case, which is unnecessary due to the failure of proof on other elements). Critically missing from Docufinish's evidence is any showing that John J. McKillip or Stanley J. Stack gained any suspicion that Docufinish was making integrated card products of the type that infringe the patent-in-suit, let alone more than a "mere suspicion," as required by the law. That is because in each of these circumstances, the mere word "integrated cards" does not convey that it is necessarily, or even probably, of the type that infringes the patent-in-suit.

John J. McKillip's unrebutted testimony is that there are various types of integrated card products. (Page 13.)[4] This is confirmed by Docufinish's own witness, Mr. Casagrande, who admitted that he has a patent on a different type of integrated card product from that of the patent-in-suit. (289:12-4.) According to Mr. Casagrande, not all integrated cards are the same:

> Q: So not all integrated cards are the same, correct?
>
> A: Correct.
>
> Q: And you can make integrated cards that use -- that conform to your patent, correct?
>
> A: Yes
>
> Q: Well, you can also make integrated cards that don't, correct?
>
> ***
>
> A: Yes.

(290:5-15.) Mr. Casagrande also admitted that one has to test a product to determine whether it falls under a patent (with reference to his own patent):

> Q: Okay. And you don't know whether a product falls under your patent without examining it and testing it, right?
>
> A: Yes.

(290:17-19.)

That identification of an integrated card product within the patent-in-suit requires invasive examination and testing of the product was also shown in John McKillip's response to questioning of Docufinish's counsel. When asked to confirm whether a product (Defendant's Ex. 2) handed to him in the courtroom was of the type described in his patent, the question could not be answered without disassembling the product. (Page 30.)

Other testimony proved that there are different names used to refer to "integrated card" products. For example, Mr. Wooley admitted that he does not call the product that Docufinish has characterized as an "integrated card" by that name; instead, he calls it a "generic card."

---

[4] Those citations to the record referred to as "Page ___" are from the draft transcript and are attached as Exhibit C.

(231:14-23.) Similarly, Mr. Paveza admitted that he calls the same product a "clean release" card, with reference to Defendant's Exhibit 16. (306:8-12; 307:11-16.)

John J. McKillip also explained why he did not learn of Docufinish's products from trade magazines or from the few trade shows he attended. With respect to the trade magazines, on their face they only refer in non-specific terms to "integrated cards," a term which, as shown above, includes many non-infringing alternatives. Moreover, the existence of these trade publications and use of the generic term cannot prove the patent owners' knowledge of the infringement, because John J. McKillip does not read them because he does not read well. (Page 69.) With respect to trade shows, John J. McKillip does not look at other companies' booths because they are the same as him: manufacturers. (Page 78.) He does not buy any of there products. *Id.* Instead, he walked around the trade shows and, if he saw someone he knew, a distributor, he would say hello. *Id.* None of these prove the patent owners' knowledge of Docufinish's infringement before this case was filed.

At most, Docufinish's evidence -- if believed -- would indicate that John McKillip received information suggesting that Docufinish manufactured an unspecified integrated card, and that on one isolated occasion he was exposed to sample books which may have contained such a product, among other products. This, alone, is not enough to raise even a suspicion of infringement, because there are many types of non-infringing products, and there was no evidence that John J. McKillip was afforded an opportunity to do the type of invasive inspection and testing of the alleged samples needed to get any understanding of possible infringement.

### B. Docufinish Has Failed to Put an Accused Product in John's Hands

On just two occasions has Docufinish attempted to put an accused integrated card in John J. McKillip's hands. Both of those occasions fail to show that John J. McKillip knew or should have known of Docufinish's accused integrated card products by a preponderance of the evidence, as each is entirely uncorroborated (and is denied). The weakness of Docufinish's case is highlighted by the fact that it must resort to two uncorroborated instances from more than ten years ago in order to even attempt to prove its affirmative defense of laches.

#### 1. Mr. Casagrande's Lost Sample Book

Docufinish offered testimony from Mr. Casagrande that he showed to John J. McKillip a sample book which contained two Docufinish integrated card products. (252:23-24; 274:10-12.). But Casagrande also admits that his sample book changed over time, and he could not confirm

that the copied sample book presented in court was the one allegedly shown to John J. McKillip. Furthermore, Mr. Casagrande, a biased witness, is a former Docufinish employee. (247:2-5.) Critically absent is any testimony from Mr. Casagrande that he specifically showed John J. McKillip the actual Docufinish product (Defendant's Exhibit 31-A) that was purportedly in the missing sample book. The testimony is that he doesn't "have a specific sample," but knows that he "showed him documents with USA in it." (285:12-13.) However, Mr. Casagrande also admitted that he has no specific memory of showing John J. McKillip any specific integrated card products:

> Q: So you have no specific memory of showing John McKillip any specific integrated card products; is that correct?
>
> A: The actual card, no, but the promotional sample I remember having USA on it and showing him that.

(286:15-18.)

Also absent is any testimony that, even if Mr. Casagrande did show John J. McKillip the Docufinish product purportedly in the sample book, John J. McKillip knew it was made by Docufinish. That is because it does not bear Docufinish's name. (Defendant's Exhibit 31-A.) Mr. Casagrande testified as follows:

> Q: And someone looking at a document that had USA on it wouldn't necessarily conclude that that's a product coming from any individual company, would it?
>
> A: It depends on the individual.

(286:23-287:2.) There is no evidence by Docufinish that John J. McKillip knew in 1996 that Docufinish's products bore the name USA. Indeed, Docufinish admits that its name does not appear on integrated card products that are actually ordered: "Our name of our company would never appear on anything we manufacture." (169:22-25.)

### 2. Baltimore Trade Show in 1998

John Walter McKillip, Docufinish's Vice President of Sales since 1997 and Stephen McKillip's son, testified that John J. McKillip approached the Docufinish booth at a trade show in Baltimore in 1998. (341:3-8; 341:21-23; 342:10-12.) That testimony is completely uncorroborated. There were three others who were also working that booth. (342:3-7.) Docufinish offered no testimony from any of the other three that they saw John J. McKillip at

that show. To the contrary, Docufinish offered the testimony from one of the three, Ms. Storjohann, that she did not see John J. McKillip at this trade show. (367:8-10.) Finally, there is no competent evidence of any specific product of defendants that John J, McKillip might have been shown at the Baltimore trade show, and no evidence that he had any opportunity to invasively disassemble and test it, which is admittedly necessary to know if infringement might possibly exist.

## V. Conclusion

For the foregoing reasons, pursuant to Rule 52(c), Integrated Cards requests that the Court enter judgment against defendant on the affirmative defense of laches.

Date: <u>March 9, 2009</u>    <u>s/Jon A. Birmingham</u>
Steven C. Schroer
Mark W. Hetzler
Jon A. Birmingham
FITCH, EVEN, TABIN & FLANNERY
120 South LaSalle Street, Suite 1600
Chicago, Illinois 60603
Telephone: (312) 577-7000
Facsimile: (312) 577-7007
*Attorneys for Integrated Cards, L.L.C.*

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing PLAINTIFF'S MOTION PURSUANT TO FED. R. CIV. P. 52(C) FOR JUDGMENT AS A MATTER OF LAW DISMISSING AFFIRMATIVE DEFENSE OF LACHES AND MEMORANDUM IN SUPPORT was caused to be served upon the following in the manner set forth below on March 9, 2009:

***Via Electronic Delivery*:**
Jacqueline A. Criswell
TRESSLER, SODERSTROM, MALONEY & PRIESS
233 South Wacker Drive, Suite 2200
Chicago, Illinois 60606
(COUNSEL FOR DEFENDANT AND COUNTER CLAIMANT, MCKILLIP INDUSTRIES, INC. D/B/A USA/DOCUFINISH)

Michael P. Chu
BRINKS HOFER GILSON & LIONE
NBC Tower – Suite 3600
455 N. Cityfront Plaza Drive
Chicago, Illinois 60611-5599
(COUNSEL FOR DEFENDANT AND COUNTER CLAIMANT, MCKILLIP INDUSTRIE S, INC. D/B/A USA/DOCUFINISH)

  s/Jon A. Birmingham  
*Attorney for Integrated Cards, L.L.C.*